103 So.2d 331

**Edna NIX, Adm'x, etc.,**

v.

**Sallie PURNELL et al.**

**7 Div. 385.**

Supreme Court of Alabama.

May 29, 1958.

Glen T. Bashore and Walter C. Hayden, Jr., Clanton, and Oliver P. Head, Columbiana, for appellant.

Paul O. Luck, Columbiana, for appellees.

STAKELY, Justice.

This is a case in which claims were sought to be established against the estate of a decedent. Granison Nabors died intestate on or about the 29th day of February, 1956, at Montevallo in Shelby County, Alabama. Letters of Administration on the estate were granted to Edna Nix upon order of the Pro-

**431**

bate Court of Shelby County. On April 3, 1956, Sallie Purnell and James Prentice filed separate claims against the estate of Granison Nabors in the amount of $500 and $100, respectively, for services rendered to the decedent during his last illness.

There was a motion by the administratrix to move the estate to the Circuit Court of Shelby County, in Equity and an order was entered by the court to that effect. On September 19, 1956, the administratrix filed a contest of the two claims and demanded a jury trial on such issues. This cause was tried in the Circuit Court of Shelby County, in Equity, on the claims filed by Sallie Purnell and James Prentice, with the result that there was verdict for $500 in favor of Sallie Purnell and for $100 in favor of James Prentice, the claimants in the cause. There was motion to set aside the verdict which the court overruled and thereupon rendered a final decree in agreement with the verdict in favor of the claimants.

The evidence is undisputed that Granison Nabors died leaving no wife and no children and there is no proof that he had any close relatives. The evidence is uncontradicted that the decedent resided next door to the claimant Sallie Purnell and from the date of the death of the wife of Granison Nabors on September 29, 1953, to the date of the death of the decedent on February 29, 1956, Sallie Purnell had performed services for the decedent continuously. At various times during this period the claimant James Prentice performed certain personal services for the decedent. It appears that Granison Nabors was not penniless but received payments of social security. There is also some testimony in the record that he was paid some money by Alabama College, where he had worked to the time of his illness.

The testimony of Annie Mae Allen, a witness for the claimants, showed that she lived across the street from the claimants and decedent and that until the date of the death of the deceased on February 29, 1956, she visited the claimant, Sallie Purnell, from once to twice each day and that the

deceased at that time was staying at the home he had occupied for several years. She testified that she saw Sallie Purnell nurse, cook, prepare meals for the decedent, clean the house in which decedent then resided, attend to him, give him his medicine, just doing the various things that needed to be done at the home. She also took the decedent during his illness back and forth to the doctor and did practically everything around the house; that there was no one else to do these necessary duties.

There was testimony that Sallie Purnell used to bring the decedent meals and coffee. If his house needed cleaning, she would clean the house and clean his bed and put on clean bedding and keep him in clean clothes. Granison Nabors was helpless and became weaker and weaker from the time he went to bed until he died.

There was proof that James Prentice, the other claimant, would bring in wood and coal in order to keep the decedent from getting up in the mornings and would shave and bathe him.

There was proof that the services of Sallie Purnell continuing as they did over the period from 1953 to the time of the death of the decedent, were worth more than $500 and there was proof that the services rendered by James Prentice were worth about $100.

At the conclusion of the evidence the administratrix asked for the affirmative charge as to each claim, which was refused by the court, and this appears to be the main basis of the appeal now before this court.

It is insisted by the appellant that there was no proof showing an express or implied agreement by the decedent to pay or an expectation on the part of the claimants at the time the services were rendered to receive payment for the services. It is insisted that the proof at best shows that the services of the claimants were gratuitous and grew out of the family relationship.

It is quite true that where there is a family relationship the law requires stronger proof to establish a claim for personal services against an estate than is required to establish ordinary claims by strangers. Box v. Box, 247 Ala. 291, 24 So. 2d 28. We feel, however, that in this case we should not apply the rule here referred to as there was no relationship between the deceased and the claimants. The claimants were the sister and brother of the deceased's wife and were nothing more than neighbors, who probably had a kindly feeling for the deceased. Under the circumstances we think the rule should be applied which is stated in Richards v. Williams, 231 Ala. 450, 165 So. 820, to the effect that if one knowingly accepts services rendered by another and the benefit and result thereof, the law implies a promise on the part of the one accepting with knowledge the services rendered by another to pay the reasonable value of such services rendered. Hood v. League, 102 Ala. 228, 14 So. 572; Irvin v. Strother, 163 Ala. 484, 50 So. 969. If this latter rule be applied as the true rule to be question for the jury as to whether or not applied here then, undoubtedly, it was a there was an implied contract on the part of Granison Nabors to pay the claimants for their services.

Upon a consideration of the entire matter we think the court acted correctly in submitting this question to the jury.

There was obviously no error in refusal of charges requested by the appellant and made the basis of assignments of error, such charges being either misleading or contrary to the rule which we have stated.

It is our judgment that the decree of the lower court should be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.